**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 9, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOSEPH PRINCE,

    Defendant - Appellant.

No. 20-1239
(D.C. No. 1:18-CR-00300-RM-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT***
_____

Before **TYMKOVICH**, Chief Judge, **BRISCOE**, and **BACHARACH**, Circuit Judges.
_____

After a jury convicted Joseph Prince of numerous counts arising out of a scheme to swindle millions of dollars from the Department of Veterans Affairs (VA), the district court imposed a low-end Guidelines sentence of 192 months' imprisonment. Mr. Prince appeals from his sentence, arguing that the district court erred in adding four offense levels for an intended loss exceeding $20 million. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we affirm.

---

    * After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

The fraud scheme involved the VA Spina Bifida Healthcare Program (the Program). The Program provides coverage for the medical needs of persons born with spina bifida after their veteran parents were exposed to Agent Orange while serving in the Korean or Vietnam wars. The VA employed Mr. Prince to work at a call center for the Program, assisting beneficiaries with obtaining services and with the authorization, processing, and payment of claims.

The Program pays for beneficiaries to receive home healthcare benefits. These benefits include: (1) home health aide services, such as assistance with bathing, toileting, eating, dressing, and exercising, as well as assistance with medical equipment and health monitoring; and (2) homemaker services, such as cooking, laundry, and light housekeeping. The Program covers only services performed by approved providers acting within the scope of their authority. It also requires that individual home health service providers have certain qualifications and be supervised by a registered nurse.

Mr. Prince convinced his family members and friends to set up home health agencies. But these agencies were shams; they were not approved providers and did not employ the registered-nurse supervisors required by the Program. Then Mr. Prince falsely told beneficiaries and their caregivers that the caregivers were eligible for compensation for providing home healthcare services, even if they had no qualifications. He referred them to the sham home health agencies to file the paperwork and bill the VA. The caregivers received a small portion of the amounts

2

billed, with the remainder (excluding some costs) split between Mr. Prince and his friends and family. Before the fraud was discovered, Mr. Prince had enrolled the caregivers of approximately 45 beneficiaries with the sham agencies. And the agencies had submitted bills to the VA totaling at least $20,060,081.16, of which the VA had paid $18,777,134.68.[1]

The third superseding indictment charged Mr. Prince with 45 counts: eleven counts of felony conflict of interest, in violation of 18 U.S.C. §§ 208(a) and 216(a)(2); ten counts of health care fraud and aiding and abetting, in violation of 18 U.S.C. §§ 1347 and 2; one count of conspiracy to commit an offense against the United States, in violation of 18 U.S.C. § 371; six counts of soliciting/receiving an illegal gratuity, in violation of 18 U.S.C. § 201(c)(1)(B); six counts of soliciting/receiving an illegal kickback, in violation of 42 U.S.C. § 1320a-7b(b)(1)(A); eight counts of unlawful monetary transactions, in violation of 18 U.S.C. § 1957; and three counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). A jury found him guilty on all 45 counts.

At sentencing, the district court clarified that the proper focus was intended loss and the victim of the offense was the VA, not the beneficiaries of the Program. Applying various increases to the offense level, including a four-level increase under Sentencing Guideline § 2B1.1(b)(7) for an intended loss to a government health care

---

[1] The government initially identified bills totaling $20,060,081.16. It subsequently identified another $375,172 in bills that were submitted to the VA but were not paid, for a revised total intended loss of $20,435,253.16.

program of more than $20 million, the district court determined that the applicable offense level was 36. With Mr. Prince's criminal history category of I, the resulting Guidelines range was 188 to 235 months. The district court sentenced Mr. Prince to 192 months of imprisonment, three years of supervised release, and $18,777,134.68 in restitution.

**DISCUSSION**

On appeal, Mr. Prince challenges only the four-level increase in his offense level under § 2B1.1(b)(7). We review the district court's loss-calculation methodology de novo and its factual finding of loss for clear error. *See United States v. Crowe*, 735 F.3d 1229, 1235-36 (10th Cir. 2013). Under the clear error standard, "we may disturb the district court's loss determination . . . only if the court's finding is without factual support in the record or if, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made." *Id.* at 1236 (internal quotation marks omitted); *see also United States v. Gould*, 672 F.3d 930, 935 (10th Cir. 2012) ("A district court's factual finding is clear error only if it is simply not plausible or permissible in light of the entire record on appeal." (internal quotation marks omitted)).

Section 2B1.1(b)(7) directs the court to add four levels when "the defendant was convicted of a Federal health care offense involving a Government health care program" and the loss to such program was more than $20 million. "[L]oss is the greater of actual loss or intended loss." U.S. Sent'g Guidelines Manual § 2B1.1 cmt. n.3(A) (U.S. Sent'g Comm'n 2018). For purposes of § 2B1.1, "loss equals actual

4

loss (or intended loss) minus credits against loss." *Crowe*, 735 F.3d at 1237. Here, the calculation involves intended loss rather than actual loss.

As Mr. Prince concedes, under Application Note 3(F)(viii) to § 2B1.1, "the aggregate dollar amount of fraudulent bills submitted to the Government health care program shall constitute prima facie evidence of the amount of the intended loss, . . . if not rebutted." The government showed that the amounts billed to the VA totaled more than $20 million. In the district court, Mr. Prince attempted to rebut this evidence by arguing that the court should deduct the value of services provided to the beneficiaries. He asserted that it was the government's burden to ascertain the value of those services, and it had made no effort to identify or value the services. But the district court disagreed. It laid out four reasons to reject Mr. Prince's position: (1) there was no evidence that he intended to confer a benefit on the VA; (2) there was no evidence that he intended to confer a benefit on the beneficiaries of the Program; (3) the VA received no services; and (4) the VA received no value, because it was not authorized to pay for services rendered by unqualified personnel. The district court subsequently stated, as a fifth point, that no services were added because of Mr. Prince's program; the caregivers were already taking care of the beneficiaries, and he simply paid them to do what they were already doing.

On appeal, Mr. Prince asserts that the district court erred in calculating intended loss because it analyzed whether he conferred a benefit on the VA, not whether he "purposefully sought to inflict more than $20,000,000 of pecuniary harm on the VA," Aplt. Opening Br. at 10 (internal quotation marks omitted), as required

5

by Application Note 3(A)(ii) to § 2B1.1. He further argues that trial evidence showed he did not seek to inflict that amount of pecuniary harm on the VA, because "his intent was to give some of that money to the spina bifida beneficiaries for covered services." Aplt. Opening Br. at 10. "[A]ll of the spina bifida beneficiaries, or their caregivers, who testified at trial said that they did receive some benefits through the home health entities from the VA, which indicates that Mr. Prince did not intend the value of all the services to be a loss to the VA." *Id.* at 11.

To the extent that Mr. Prince asserts that the district court used the wrong methodology in calculating intended loss, he has not shown where he preserved any such objection. Our review indicates that although he objected to the district court's finding, he never asserted that the district court erred by discussing whether he conferred a benefit on the VA.[2] Therefore, we review only for plain error. *See United States v. Maynard*, 984 F.3d 948, 966 (10th Cir. 2020). But Mr. Prince does not argue for plain error. "When an appellant fails to preserve an issue and also fails to make a plain-error argument on appeal, we ordinarily deem the issue waived (rather than merely forfeited) and decline to review the issue at all—for plain error or otherwise." *United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019).

---

[2] To the contrary, after the district court explained its first four grounds for rejecting the objection, Mr. Prince's counsel stated, "I think the Court was logical and persuasive, honestly, about the four-point intentional aspect of this." R. Vol. 5 at 1884. And then, in reiterating Mr. Prince's position that the court should deduct the value of the services provided to the beneficiaries, counsel framed his argument in terms of benefit to the VA. *See id.* at 1885.

To the extent that Mr. Prince makes the same argument he made in district court—that the court should reduce the amount of intended loss by the value of the services provided to the beneficiaries—the district court did not clearly err in finding that the intended loss exceeded $20 million. The bills submitted to the VA were sufficient to establish the amount of intended loss, and Mr. Prince failed to rebut that evidence. Although Mr. Prince argues in his opening brief that he intended those in the Program to receive some benefit and cites examples of care given, care provided by unqualified caregivers did not benefit the VA and payments made by the VA for that care was therefore a loss to the VA. Most, if not all, of the caregivers were unqualified under the Program's requirements, and none were supervised as required. Further, none of the home health agencies were approved providers, and those services were of no value to the VA. Mr. Prince knew that if the true facts were apparent, the VA would not pay anything for the services. His intention to share a small portion of the VA's money with the caregivers does not mean that he did not intend to inflict pecuniary harm on the VA.

## CONCLUSION

The district court's judgment is affirmed.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

7